UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| JOHN NORMAN, Public Administrator of the Estate of Thomas Arthur Cicalese, ) ) ) ) Plaintiff, ) ) V. ) ) UNITED STATES OF AMERICA, ) ) Defendant. ) | Civil Action No. 5: 25-056-DCR<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff John Norman, Public Administrator of the Estate of Thomas Arthur Cicalese ("Norman") filed this action against the United States following the death of Thomas Cicalese ("Cicalese") while in the custody of the Bureau of Prisons ("BOP"). This matter is now pending for consideration of the United States' Motion for Partial Dismissal of Norman's Complaint. [Record No. 12] The United States' motion will be granted for the reasons that follow.

**I.**

On April 13, 2023, Cicalese informed FMC Lexington staff that he was experiencing back pain, and having difficulty getting dressed, getting out of bed, and walking.[1] [Record No. 1, ¶¶ 12-13] Cicalese requested out-of-facility medical treatment the same day. [*Id.*, ¶13] Two days later at around 10 a.m., a corrections officer observed that Cicalese was found sitting

---

[1] The Court construes the Complaint in the light most favorable to Norman and accepts as true all "well-pleaded facts" in the Complaint based on the legal standard articulated in Part II. B. below. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014).

on the floor of his room and crying. The observation was document in a message to the facility's medical unit. [*Id.*, ¶14] Officers further noted that Cicalese had complained and made multiple requests for medical treatment; however, he was removed him from the medical unit. [*Id.*]

On April 16, corrections staff returned Cicalese to the medical unit based on an "altered mental state, complaints of pain for several days, and abdominal swelling." [*Id.*, ¶16] Later that day, Cicalese was transported to the University of Kentucky Emergency Department *via* ambulance and admitted for 'altered mental status with diagnoses of acute brain disorder, acute kidney failure, septic shock, brain disorder, brain injury with coma, and bleeding on the brain." [*Id.*, ¶17]

A corrections officer admitted that since April 14, Cicalese had exhibited signs of confusion, and had trouble following commands. [*Id.*, ¶18] A physical examination indicated Cicalese was experiencing acute distress, a tachycardic cardiovascular rate, and a tachypneic pulmonary rate. "Additionally, [] Cicalese's abdomen was distended, and he was jaundiced." [*Id.*, ¶20] "The University of Kentucky noted that the initial clinical impression was that [he] was suffering from encephalopathy." [*Id.*, ¶21]

Later on April 16, Cicalese became unresponsive, was moved to the critical care unit, and was intubated. On April 17, Cicalese experienced cardiac arrest but he was subsequently resuscitated and stabilized. [*Id.*, ¶¶ 23-24] "A CT scan on April 18, 2023, demonstrated diffuse cerebral edema, herniation of cerebellar tonsils, and possible pseudosubarachnoid [sic] hemorrhage or subarachnoid hemorrhage" and a clinical exam indicated a catastrophic brain injury. [*Id.*, ¶¶ 26-27] Thereafter, Cicalese's family opted to pursue comfort care and terminal extubation. Cicalese died April 19, 2024, at 3:22 p.m. [*Id.*, ¶¶ 28-29]

BOP medical records indicate that the medical staff at FMC Lexington were previously aware of Cicalese's medical history of cirrhosis of liver, acute bronchitis, esophageal varices, psoriasis, basal cell carcinoma of the skin, coronary angioplasty implant and graft, and substance abuse. [*Id.*, ¶ 12]

Norman initiated this action on March 3, 2025, as the public administrator of Cicalese's estate. [Record No. 1] He asserts claims against sounding in negligence (Count I), negligent hiring, retention, and supervision (Count II), and wrongful death (Count III). The United States moves to dismiss Count II and any portions of the Complaint in which it is incorporated under Rule 12(b)(1) of the Federal Rules of Civil Procedure. It also moves to dismiss Norman's separate demands for prejudgment interest, punitive damages, and a jury trial.

## II.

### A.   Rule 12(b)(1), Fed. R. Civ. P.

A motion filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges subject matter jurisdiction in one of two ways: a facial attack or a factual attack. *See Gentek Bldg. Products, Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleading". In resolving a motion making such a challenge, the Court takes the allegations contained in the Complaint as true. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Thus, the review applied to a facial attack is identical to that used when reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015).[2]

---

[2]   A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiff's Complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When

### B. The Federal Tort Claims Act

Although the United States as a sovereign is immune from claims against it, the Federal Tort Claims Act ("FTCA") creates a limited waiver of that immunity, thus permitting suit against the government for, *inter alia*, personal injuries caused by its employees. 28 U.S.C. § 1346(b)(1). *See also United States v. Mitchell*, 463 U.S. 206, 212 (1983). But the United States does not waive its immunity for injuries caused by government employees in the performance of discretionary acts. 28 U.S.C. § 2680(a). *See also Montez ex rel. Estate of Hearlson v. United States,* 359 F.3d 392, 395 (6th Cir. 2004). Specifically, 28 U.S.C. § 2680(a) provides that the FTCA's waiver of immunity does not apply to:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). "The [discretionary function exception] is not merely an affirmative defense; it is a jurisdictional bar." *Stanford v. U.S.*, 992 F. Supp. 2d 764, 770 (E.D. Ky. 2014). Thus, the Court lacks subject matter jurisdiction over the claim, and it must be dismissed if Norman's allegation of negligent hiring, retention, or supervision claim falls within this exception. *Id*. (citing *Kohl v. United States*, 699 F.3d 935, 940 (6th Cir. 2012).

The Court utilizes a two-part test to determine whether a governmental act falls within the discretionary function exception. "First, a court must ask whether the act involves 'an element of judgment or choice.'" *Montez*, 359 F.3d at 395 (quoting *United States v. Gaubert*,

---

addressing a motion to dismiss, the Court views the Complaint in the light most favorable to the plaintiff and accepts as true all "well-pleaded facts" in the Complaint. *D'Ambrosio*, 747 F.3d at 383.

499 U.S. 315, 322 (1991)). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

If the answer to this first question is in the affirmative, the Court next determines "whether that judgment is of the kind that the discretionary function was designed to shield." *Id*. at 322-323. This inquiry furthers the purpose of the exception, which is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id*. at 323 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)). Thus, "when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Id*. (citation modified).

If a regulation mandates particular conduct and an employee violates that mandatory regulation, "there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." *Id*. at 324. In contrast, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id*.

Considering this strong presumption, to survive a motion to dismiss, a Complaint "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id*. at 324-25.

### III.

The United States' motion challenges Norman's negligent hiring, retention, or supervision claim in Count II, and his separate demands for prejudgment interest, punitive damages, and a jury trial. Norman "concedes that under the FTCA, prejudgment interest, a jury trial, and punitive damages are not available." Therefore, as a preliminary matter, those demands will be stricken from the Complaint.

#### Negligent Hiring, Retention, and Supervision

The Complaint alleges that the United States "failed to properly supervise its employees, representatives, and agents to ensure that they would not create an unsafe environment for [the] decedent and to ensure that the negligent and tortious conditions described in this complaint would not occur." [Record No. 1, ¶ 41] To state a claim for negligent supervision in Kentucky, Norman must demonstrate that the United States "knew or had reason to know of [its] employee's harmful propensities; that the employee injured the plaintiff; and that the hiring, supervision, or retention of such an employee proximately caused the plaintiff's injuries. *Grand Aerie Fraternal Ord. of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005) (quoting 27 Am. Jur. 2d *Employment Relationship* § 401 (2004)). However, the United States moves to dismiss the claim under Rule 12(b)(1) rather than 12(b)(6).

    A.    **Matters for the Court's Consideration**

The United States argues that negligent hiring, retention, and supervision fall squarely within the FTCA's discretionary function exception. *See Stout v. United States*, 721 F. App'x 462, 467 (6th Cir. 2018) ("[W]e have established that the exception bars negligent training or negligent supervision claims." (quoting *Wilburn v. United States*, 616 F. App'x. 848, 852 (6th Cir. 2015))) (citation modified). In response, Norman points to a series of BOP Program

Statements in an attempt to prove the BOP's actions were nondiscretionary. The United States, however, points out that none of the Program Statements were included or otherwise incorporated in the Complaint.

A motion to dismiss tests *only* the sufficiency of the Complaint and its incorporated allegations. *See Tucker v. Kentucky Farm Bureau Mut. Ins. Co.*, 631 F. Supp. 3d 438, 448 (E.D. Ky. 2022) ("[T]he Court 'may not consider matters beyond the complaint' in deciding a motion to dismiss." (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001))). Although this can vary when defendants *factually* attack the Complaint, the Court accepts Norman's allegations as true under the government's present *facial* attack. And because the United States asserts a facial attack (rather than a factual attack on Norman's allegations), the Court is limited to the Complaint and its attachments. *See Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015) (contrasting matters courts may consider in factual attacks as opposed to facial attacks and Rule 12(b)(6) motions); *Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014) (noting that courts evaluate the "factual predicates for jurisdiction," in factual, rather than facial challenges under Rule 12(b)(1)). Accordingly, to avoid converting the present motion to dismiss into a motion for summary judgment, the Court will not consider evidence outside of the Complaint and its attachments.

B.     **The Discretionary Function Exception**

On its face, the Complaint lacks the requisite "specific regulations" to establish Count II falls outside of the FTCA's discretionary function exception. *Snyder v. United States*, 590 F. App'x 505, 510 (6th Cir. 2014). The *Snyder* court affirmed a lower court's dismissal of an identical claim in the absence of specific authority "that would constrain the judgment exercised [by United States employees] in making these decisions." *Id.*

The discretionary function exception first turns on whether an element of judgment or choice is involved in a government employee's actions or, conversely, whether the action was required by law. If the action involved a choice, the Court must then determine whether that choice amounts to "social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323. As outlined above, the Complaint itself does not adequately allege whether the United States' negligent failure to hire, retain, or supervise its staff constitutes a mandatory directive, nor to it point to any such directives. Regarding the second element, the Court cannot usurp the Sixth Circuit's longstanding determination that "supervision, training, and retention require policy judgments—the type that Congress intended to shield from tort liability[.]" *Snyder*, 590 F. App'x at 510 (collecting cases above).

### IV.

Based on the foregoing, it is hereby **ORDERED** as follows:

1. The United States' Motion for Partial Dismissal [Record No. 12] is **GRANTED**. Count II and allegations in which it is incorporated are **DISMISSED** and **STRICKEN** from the Complaint.

Dated: August 4, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky